cumbrance upon the land in the petition described, and that on June 2, 1900, it was an encumbrance upon the real estate in the peti-·tion described, and that it is included within the terms of the covenants of warranty contained in said deed, and that taxes and assessments are separate and distinct things, and that the exception in said deed does not release the defendants from the payment of said assessments."

"Judgment for plaintiff."

Judgment of common pleas affirmed by sixth circuit court.   Haynes and Parker, JJ.

---

(Lucas County Common Pleas.)
MATILDA TUCKER v. WILLIAM J. GILLETTE.

---

*Action against a physician for malpractice—Limitations—*

An action, begun June 27, 1899, against a physician who had performed an operation on a patient on November 30, 1897, and attended her until sometime in April, 1898, when th' last services were performed, except that in November, 1898, she went to his office, not to consult him but to accuse him of malpractice, cannot be maintained as such action was not brought within one year after the cause Revised Statutes.

---

MORRIS, J. (orally)

This case is now before the court, the evidence in behalf of plaintiff having been concluded, upon a motion to direct a verdict for defendant in this case, for the reason that the statute of limitations has so intervened, that the plaintiff cannot maintain this action.

The action is one for damages, begun June 27, 1899, by the plaintiff against the defendant, a physician and surgeon for his alleged careless and unskilful performance of a surgical operation on plaintiff on the third day of November, 1897, and for careless and unskilful treatment of the wound, resulting from said operation, for one year thereafter.   In other words the action is against the physician for malpractice and under section 4983, Rev. Stat., can only be maintained when brought within one year after the cause of action accrued.   The defendant has sought to avail himself of this statute as a bar to the action, and among other defenses alleges in his answer that he did not treat the plaintiff, nor perform any professional service of any kind for her during a period of more than one year next preceding the commencement of the action, and that the cause of action stated in plaintiff's petition did not accrue within one year before the commencement of this action, and that the

cause of action is therefore barred by the statute of limitations. This defense is denied in the reply, and the question now is whether; as the case now stands, it can be claimed that plaintiff's cause of action or any part of it accrued within one year before the suit was brought. In other words is there any evidence tending to show that on and after June 27, 1898, the defendant was in plaintiff's service as her physician and surgeon, under the retainer of November, 1897.   If his obligations under said retainer had ceased prior to June 27, 1898, no recovery can be had and the motion should be granted.   The evidence in the case shows that the operation in question was performed at the Toledo hospital November 30, 1897; that in four or five days thereafter an abscess formed in the wound which was supposed to be due to a suture and there was a discharge of pus; that plaintiff remained in the hospital for five weeks under the defendant's care, and it was supposed the wound would soon heal, with simple dressing which plaintiff and her husband understood how to apply, and plaintiff desiring to return to her home, she was allowed to leave the hospital and defendant's immediate supervision.

Some two weeks thereafter at the request of plaintiff's husband by telephone, the defen tant visited plaintiff at her house to remove a stitch that was giving her trouble in another wound and noticed her then condition as to the abscess in question and advised her to continue the dressing and in time it would get well.   It is not clear that the doctor again saw the plaintiff until April, 1898, when accompanied by her husband plaintiff went to the doctor's office to further consult him about her wound which was still open.

The question of her condition was discussed and the doctor told her to meet him the next day at the hospital and he would make an examination and find out what the trouble was, she claiming that she was no better.   He made an examination there, according to said agreement, and as a result told her that in order to remove what he supposed to be the trouble, the buried suture, that it would be necessary to open up the wound which was made in the original operation, but that if she would have patience it would work itself out and she would get well without an operation. This was, as the testimony discloses, the understanding which the plaintiff had of the doctor's opinion of the case at that time, and such was his opinion.

She and her husband then both determined that they would not have the wound opened, but that they would bear the inconvenience of the discharge longer, and until it would work out as had been suggested by the physician, and

they left the hospital. The evidence shows that from that time, April, 1898, until perhaps the first week in November of that year, there was no communication whatever between the plaintiff and the defendant; he knew nothing of her case. She had not sought him to inform him of it and it does not appear from the testimony in the case that their relations were such as that she could have expected that he would call upon her. If she wanted assistance or advice or anything further of him, according to the manner in which they had been conducting themselves theretofore, it was her place to call upon the doctor, and not his to hunt her up. Under the retainer and the presumptions which the law raises in connection with that retainer and employment, although there were no arrangements made for another meeting at the time they separated at the hospital, no understanding between them that the doctor should take any further interest in the case unless he was called upon to do so, in law it seems to me perfectly clear that if the plaintiff needed or required any further assistance of the defendant, it was her duty to call upon him for that, and if she failed to do that, but elected to bear her troubles and inconvenience, under the circumstances of this case, without further consultation with him, there is no principle of law or fairness, upon which he can be held responsible as for neglect in the further treatment of the case: That is to say, from the time that they separated in April, at the hospital, it cannot be claimed, from the mere fact that he did not call upon this plaintiff and endeavor to inform himself of her then condition, that he was guilty of neglecting any duty which he owed her, either by virtue of the contract of employment or on any other account. Five months, or perhaps more, elapsed and he knew nothing of the case. She continued to suffer the same inconvenience and pain, annoyance and hardship, which she had been suffering for a long time and finally, in the early part of November, she called at his office, to accuse rather than to consult, and from that time it certainly cannot be claimed that he was her attending physician.

There is no evidence in this case from which it can be fairly inferred that she went there for the purpose of consulting him or getting him to do anything in particular for her. She was feeling bitter about her condition. She is not to be criticised for that. She went to his office, not having seen him for several months. He seems to have been surprised that she had not recovered, and upon asking her to the private office to discuss the matter with her, he was told at the outset that he was guilty of malpractice in the case. The doctor took offense at that charge and immediately ordered her from his office. Their relations ceased at that moment; and if her purpose in going there was to consult him with reference to further treatment, she failed to make that purpose known.

Now, under these circumstances, what culpable negligence has the defendant been guilty of from June 27, 1898, until this meeting in his office in November of that year? He had not been called upon to do anything; the patient, who was in position to inform him about the progress of her case, and theretofore had been accustomed so to do, had failed to give him that information, and I am unable to see that within this period it can be claimed that he was guilty of neglecting any duty which the law imposed upon him or that his contract required him to perform. It is not claimed that he abandoned the case, and was guilty of neglect for so doing. The case being one in which no neglect of any duty on his part is shown, after June 27, 1898, no cause of action has been disclosed or accrued and the plaintiff cannot recover.

The statute of limitations is one which, as has been well said, is no longer looked upon by the court with disfavor, but is regarded as one of repose, which tends to the peace and welfare of society by closing the courts from enforcing such stale claims. As to whether the statute of limitations which bars an action for malpractice within one year, is a wise or beneficial provision, of course we have nothing to do. The legislature has seen fit to so declare it, and although hardship may appear from the circumstances of particular cases the remedy must be with the law making power.

Under the evidence in this case, it seems to me that the defense of the statute of limitations pleaded in the answer, is a complete defense to this action.

The jury are directed to return a verdict for the defendant.